```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2
     G, a 12-year-old minor suing )
 3   by a fictitious name for     )
     privacy reasons.  Mother and )
 4   Father suing under fictitious)
     names to protect the identity)
 5   and privacy of G., their     )
     minor child,                 )
 6                 Plaintiffs,     )
                                   )
 7   vs.                           )   Case No. 15cv40116-TSH
                                   )
 8   The Fay School, by and       )
     through its Board of         )
 9   Trustees, and Robert         )
     Gustavson,                    )
10                 Defendants.     )

11


12   BEFORE:  The Honorable Timothy S. Hillman


13


14
                          Scheduling Conference
15


16


17                                 United States District Court
                                   Courtroom No. 2
18                                 595 Main Street
                                   Worcester, Massachusetts
19                                 January 13, 2016

20


21


22
                        Marianne Kusa-Ryll, RDR, CRR
23                        Official Court Reporter
                       United States District Court
24                     595 Main Street, Room 514A
                         Worcester, MA 01608-2093
25                  508-929-3399 justicehill@aol.com
                 Mechanical Steno - Transcript by Computer
```

1    APPEARANCES:

2    Markham & Read
     John J.E. Markham, II, Esquire
3    One Commercial Wharf West
     Boston, Massachusetts 02110
4    on behalf of the Plaintiffs

5    Schwartz Hannum, PC
     Jaimie A. McKean, Esquire
6    11 Chestnut Street
     Andover, Massachusetts 01810
7    on behalf of the Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              (The following proceedings were held in open court

3    before the Honorable Timothy S. Hillman, United States District

4    Judge, United States District Court, District of Massachusetts,

5    at the Donohue Federal Building & United States Courthouse,

6    595 Main Street, Worcester, Massachusetts, on January 13,

7    2016.)

8              THE CLERK:  All rise.

9              Court is now open.

01:48:44PM 10         You may be seated.  Case No. 15-40116, G versus The

11   Fay School.

12             Counsel, please note your appearance for the record.

13             MR. MARKHAM:  Good morn -- good afternoon, your Honor.

14   John Markham for all three plaintiffs, G, mother and father.

01:48:58PM 15         THE COURT:  Good afternoon, Mr. Markham.

16             MS. McKEAN:  Good afternoon, your Honor.  Jaimie

17   McKean on behalf of all the defendants of The Fay School and

18   Robert Gustavson.

19             THE COURT:  Good afternoon, Ms. McKean.

01:49:06PM 20         Don't touch anything.  We're -- we're teetering on a

21   mistrial as it is.

22             So Mr. Markham --

23             MR. MARKHAM:  Criminal or civil?

24             THE COURT:  It's criminal actually, but it's -- it's

01:49:19PM 25   criminal.  It's a criminal case that right now sounds like

1    a -- a request for commissions.

2         So what's -- so I have read the complaint and amended

3    complaint so I have a sense of what's going on, but just give

4    me a few bars on what's going on with G, and -- and then Ms.

01:49:44PM 5    McKean, I'll hear from you.

6         MR. MARKHAM:  Very well.  Very quickly, starting about

7    two years ago, maybe a little less, he started noticing

8    symptoms: headaches, dizziness, lack of concentration, heavy

9    breathing, and heart palpitations and the like.  Through a

01:50:01PM 10   series of doctors, he got diagnosed as having this EHS

11   syndrome, which is a syndrome that its proponents contend is

12   caused by being exposed to too much WI-FI creating those

13   reactions.

14        He brought it to Fay's attention through his parents,

01:50:21PM 15   and Fay and his parents have since the beginning not agreed on

16   whether he has this, whether it's a recognized disability, and

17   what to do about it.

18        I got involved about four or five months ago, four or

19   five months before the complaint.  We tried a negotiation with

01:50:40PM 20   Fay.  It didn't work out.  I filed the lawsuit, and what I

21   sought in the lawsuit initially, your Honor, was not just --

22   not only a complaint, but a motion for a preliminary injunction

23   ordering Fay to let our computer expert in to check out the

24   WI-FI to see if we could figure out if there was any way to

01:50:58PM 25   turn down the waves, or put some Ethernet cables in, rather

1        than using WI-FI.

2            Once we filed the motion where they hadn't done it

3        before, they agreed to let us come in to see if we could figure

4        something out.  We had three meetings at the school with some

01:51:16PM  5    experts from them, Ms. Jaimie McKean, my opposing counsel, and

6        myself.  They were all very cordial.  They made some efforts to

7        put a cable net in for him, an Ethernet cable for him, and to

8        move his desk away from the main WI-FI.  It wasn't enough, and

9        it didn't work.  We asked for more.  They did not think it

01:51:39PM 10    would work.  They didn't think it was appropriate.  So there

11       was no point in going back in, and we couldn't go back in for

12       what we wanted to.  We said, okay.  Answer the complaint.  They

13       did.  But before they answered the complaint, I said, you know,

14       based on what we found out when we were in there, facts about

01:51:57PM 15    your WI-FI, I want to amend the complaint once as of right I

16       get a chance to do that.  I did that, added some facts into the

17       complaint that had occurred, or which we found out about after

18       we filed the initial complaint.  So right now we're at the

19       amended complaint stage.

01:52:14PM 20            The only other thing I will tell you, your Honor, is

21       that -- two things is that I would like to amend the complaint

22       again to add just another count, no new facts.  The new count

23       is simply that we contend that not only, as we have alleged in

24       the complaint and the amended complaint, that Fay has failed to

01:52:32PM 25    provide reasonable accommodations, as they're required to under

|    |    |
|----|----|
| 1 | the Americans With Disabilities Act, but they have also |
| 2 | retaliated against G and his family for the -- for the claims |
| 3 | that they have made both before filing the complaint and after. |
| 4 | There's a special section in the Americans With Disabilities |
| 01:52:53PM 5 | Act allowing for a retaliation claim.  And so we have done |
| 6 | that.  Obviously that -- Ms. McKean can speak for herself.  She |
| 7 | denies both retaliation and a failure to make an accommodation. |
| 8 | THE COURT:  I'm guessing Ms. McKean is not going to |
| 9 | agree with that but -- |
| 01:53:07PM 10 | MR. MARKHAM:  I don't think she's going to agree with |
| 11 | much of what I said, but -- |
| 12 | THE COURT:  -- we're going out on the limb here. |
| 13 | MR. MARKHAM:  Right. |
| 14 | THE COURT:  And before I hear from Ms. McKean, |
| 01:53:14PM 15 | Mr. Markham, so what's G's status?  He's -- is he still |
| 16 | enrolled, and he is a -- |
| 17 | MR. MARKHAM:  No. |
| 18 | THE COURT:  -- student in good standing? |
| 19 | MR. MARKHAM:  He's in good standing.  Here's the |
| 01:53:26PM 20 | situation.  It's a bit of a hybrid.  He started the school year |
| 21 | in good standing this year, 2015, in September.  He started |
| 22 | getting headaches and started missing some school.  We made a |
| 23 | couple of adjustments trying to work it out with Ms. McKean. |
| 24 | It didn't work out.  The headaches kept continuing.  So he |
| 01:53:44PM 25 | asked for a medical leave between Thanksgiving and Christmas to |

1    see if we couldn't work out something and he could stay home,

2    get a tutor, get his assignments and keep up with things, still

3    enrolled in school.  Presently he's still enrolled in school.

4    His tuition is paid up-to-date.  The family is going to put him

01:54:04PM  5    into another school that does not have WI-FI on an interim

6    basis while we get this case decided by the court.  This is not

7    just a futile exercise.  The Fay School is extremely expensive.

8    It runs for nine years.  It has a beginning, a middle, and an

9    end, which are very integrated.  He is -- he is a seventh

01:54:24PM 10    grader.  He has done the first two-thirds.  He wants

11    desperately to finish both with his peers and his athletics,

12    and with a continuum of their educational system which is, you

13    know, it's a dream.  It's costly, but it's a dream.  And the

14    last one-third integrates with the second one-third and the

01:54:41PM 15    first one-third.  So he wants to hold on to that, so he's going

16    to stay at another school.  He is going to try to keep up with

17    the Fay assignments.  If your Honor orders an accommodation

18    that works after either a preliminary injunction later on or a

19    trial --

01:54:54PM 20            THE COURT:  Okay.  Hold up.

21            MR. MARKHAM:  -- and if we get something that he would

22    go back and he could make up the work and continue, fine.  If

23    he has to stay back a year, his parents want to do that.

24            THE COURT:  Thanks.

01:55:03PM 25            MS. McKEAN:  I actually agree with more than

1    Mr. Markham thinks I agree with.  With respect to his statement

2    of the facts, we do agree with most of what happened in the

3    last few months with the exception -- two major exceptions.

4          The first being it wasn't because of the complaint

01:55:17PM 5    that we allowed the first inspection.  The fact is we had

6    already reached an agreement with Mr. Markham that G would have

7    two independent medical evaluations at the Boston Children's

8    Hospital of doctors that my client was not any way connected

9    to.  In fact, I have never spoken with those doctors.  They had

01:55:34PM 10   never spoken with doctors.  These were two completely --

11   actually, it was two different clinics at Boston Children's

12   Hospital and they were saw -- they were seen by a set of

13   doctors at both of those.

14         Both of those evaluations resulted in no diagnosis of

01:55:47PM 15   EHS; and actually the second one recommended that he remain in

16   school, take a medication, learn some relaxation techniques and

17   some other techniques to deal and -- and to alleviate his

18   symptoms.  So that is the reason that we did -- we held off on

19   the inspection because the agreement was if the -- if the IME

01:56:08PM 20   find EHS, then we will allow the inspection.

21         Mr. Markham, of course, then filed the complaint.  We

22   continued negotiations about the inspection.  We actually went

23   in five times, not three times as a group.  We did not restrict

24   them in any way, shape, or form.  They were allowed to see what

01:56:24PM 25   they wanted to see.  They were allowed to bring who they wanted

to bring.  Unfortunately, they did not bring an IT expert that
actually could weigh in on ways to try to come to a solution.
The Fay School, however, did.  And we brought an individual in,
who initially the plaintiff, the mother, recommended to the
school.  He had done an analysis of the WI-FI at the school
long before the case was filed and found that it was completely
safe.

So we brought him in with us on all of these
inspections, or all of these walkthroughs, and he came up with
some ideas.  We then proposed those ideas to the plaintiffs.
They wanted to take some measurements.  We allowed them to do
that.  They came in.  They took the measurements without any
kind of experts.  They did it themselves.  And even though we
didn't find that reliable, we allowed them to do that because
we were trying to find a resolution.  We then instituted that
first proposal.

We then instituted a second proposal.

So we have tried very, very hard to try to resolve
this.  Ultimately, they asked for a leave, which we also
granted.  So.

With respect to what happened over the last few
months, a lot happened over the last few months.  We allowed
them to go to the school a number of times and were actively
working and coming up with some proposal, and we ultimately
reduced his exposure to radio frequency emissions in the

1    school.

2         And as a result our -- you know, at that point we had

3    to say to them, you still haven't shown us that it's the WI-FI

4    that's causing his symptoms, and we've tried to reduce the

01:57:57PM 5    radio frequency emissions, and anything further is going to

6    cause us to fundamentally alter our educational activities at

7    the school, and we just -- the ADA doesn't require us to do

8    that, and we just can't do that.  And that's why they asked to

9    take the leave, which they did.

01:58:14PM 10        THE COURT:  So why wouldn't -- wouldn't it -- isn't in

11   everybody's interest to get this thing to trial as soon as

12   possible?  And by that I mean like in a month or two?  I mean,

13   let's do it.  I mean this kid is waiting.  You're -- you have

14   exposure.  You have a client who wants to go back to school.  I

01:58:33PM 15   mean what's left to do here?

16        MS. McKEAN:  Well, all of the discovery.  We haven't

17   done any of the discovery, and I can tell you that I did do a

18   sweep of documents recently to get any document with basically

19   the plaintiff's last name in here, and they did have another

01:58:49PM 20   child at that school.  So there's a lot of documents, thousands

21   and thousands of documents with just their name on it.  So it's

22   going to take a substantial amount of time to get through

23   those, figure out what's relevant, figure out what needs to be

24   produced.

01:59:02PM 25        The other thing is that this is a very complicated

1    issue.  We expect to have at least two experts, at least, and

2    one of them we have not hired because we didn't know if we were

3    going to try to resolve it.  We hired the WI-FI expert, but we

4    didn't hire any kind of medical expert.

01:59:17PM 5         THE COURT:  So you've -- you've asked for May 31st so

6    why don't we -- so why don't we rock and roll early in the

7    summer then so they will have something to -- you can know and

8    they can know in the fall that they've got a student or not.

9         MS. McKEAN:  Because we do think that there's a chance

01:59:35PM 10   at that point that we may ask for summary judgment briefings,

11   and that's why -- Mr. Markham and I talked about this.  You

12   know, he was talking about a trial date.  I was talking about

13   possible summary judgment, but I won't know if I'm going to

14   file summary judgment until we get through discovery, which is

01:59:51PM 15   why we asked for a status conference so we --

16        THE COURT:  Why don't we have the summary judgment

17   then heard in June; and then if it's in your favor, good luck

18   to you and the Red Sox; and if it's not, we have a trial.

19        MS. McKEAN:  Except that at this stage we have through

02:00:08PM 20   May to finish discovery.

21             THE COURT:  There you go.

22        MR. MARKHAM:  The fact is that any of the individuals

23   that are going to be deposed from the school are obviously

24   actively engaged in school activities and are going to need

02:00:19PM 25   time to get through the -- I'm going to need time to get

1    through the documents.

2         THE COURT:  Well, you've got until May.  I mean,

3    you've got six months, five months.

4         MR. MARKHAM:  Your Honor, could I?

02:00:29PM 5         THE COURT:  Sure.

6         MR. MARKHAM:  I would tell you that we made a deal for

7    these things that I'm not walking away from it.  It was a

8    compromise deal.  She wanted longer.  I wanted what you wanted,

9    what you just suggested, but we have made a deal.  What I've

02:00:43PM 10   suggested we do, unless the Court wants it sooner than that, I

11   just don't want to argue against the deal that I've made.  I

12   believe there's not a chance for summary judgment.  We have two

13   doctors who have written opinions that he has EHS, and it's

14   caused by what's in the school.  She has some doctors who did

02:00:58PM 15   not make any diagnosis of what it was, and one of them doesn't

16   believe in EHS, the syndrome that we contend he has.  There are

17   doctors out there, and I assume that will go her way, and it's

18   a factual question.  I don't think it's going to have summary

19   judgment, but what would be very helpful, your Honor, is if the

02:01:14PM 20   court could give us a three-day trial date which we could

21   obviously vacate if --

22         THE COURT:  So is it going to be a jury-waived trial?

23         MR. MARKHAM:  It's interesting.

24         THE COURT:  I know you've asked for damages, but --

02:01:25PM 25         MR. MARKHAM:  Yeah.  First of all, I found out a lot.

1   Under the ADA for an accommodation everything -- the only

2   people who are allowed to -- who are -- the ADA is imposed upon

3   are public accommodation owners.  But public accommodations

4   take two types.  One is private schools, private restaurants,

02:01:43PM 5   private movie theaters.  You can't get damages against them.

6   You can only get attorneys' fees if the court orders them, and

7   you can get the injunctive relief.

8        There is another commission which says you can get

9   retaliation.  You can get injunctive relief for retaliation,

02:01:58PM 10   but you can't get attorney -- you can't get attorneys' fees.  I

11   mean can you get attorneys' fees, but not damages.  However,

12   the courts have ruled that with respect to all accommodation

13   claims they are judge tried, not jury tried.

14        We have some supplemental claims under state law for

02:02:16PM 15   breach of contract because their contract glowingly talks about

16   how it will accommodate everybody, and we do not contend they

17   have done that.  They deny that.  That would be a jury trial

18   unless we were to drop those.  We don't know whether we will or

19   not.  So what we think is going to happen is unless the court

02:02:33PM 20   grants summary judgment, and I don't think it can given the

21   facts we already have, that we could be ready if they were to

22   assess the summary judgment.  It wouldn't be that hard for the

23   court to decide it quickly.  We would like a trial sometime in

24   June or July unless, of course, the Court grants summary

02:02:50PM 25   judgment and the Red Sox win, because if the court were to

1   grant us relief, it would be easily time to do that before the

2   school starts in September because nobody is at the school

3   except a couple of maintenance people.  Our people could go in.

4   Their people could go in.  We could implement the order by

02:03:05PM 5   rewiring a few things.

6          This time -- this year, we were hamstrung because we

7   didn't get in until after school started, and then there are

8   kids running all over the place until 3:30 every day, and then

9   they come back in at 5:00.  So we had an hour and a half a

02:03:20PM 10   couple of days.  So what we would like, your Honor --

11          THE COURT:  Stop.  Stop.  Stop.

12          MR. MARKHAM:  Okay.

13          THE COURT:  I know what you want.  All right.  Let me

14   look at this.  I mean, I want this done.

02:03:28PM 15          MS. McKEAN:  May I be heard, your Honor?

16          THE COURT:  No.

17          MS. McKEAN:  I'm very -- I'm very concerned about

18   June.

19          THE COURT:  No.  Let me -- let me work.  I'm going to

02:03:34PM 20   give you a schedule, and you guys will have to work through it.

21          MS. McKEAN:  Can I just -- I would like to make a

22   statement about June though because given our agreement, we

23   reached an agreement with respect to this order.  I have not

24   spoken with my clients about their availability for July.  I

02:03:48PM 25   have though spoken with them about June because they were

1    concerned with this order in June because June is the end of

2    their school year, their finals, their commencement.

3          THE COURT:  You won't -- the case will not be tried in

4    June.

02:04:01PM 5          MS. McKEAN:  And Mr. Gustavson's daughter is then

6    graduating from college, and I haven't talked to them about

7    their availability in July because of the agreement we've

8    reached.

9          THE COURT:  I'm going to go out on -- I'm going to go

02:04:12PM 10   out on a limb one more time here.  I'm not sure I care about

11   their availability.  This case needs to be tried.  Okay.

12   So I'll -- let me look at this, and we'll give -- send you a

13   schedule, but get ready to try it this summer.

14          Okay.  Thank you.

02:04:27PM 15          MR. MARKHAM:  Thank you, your Honor.

16          MS. McKEAN:  Thank you.

17          (At 2:04 p.m., Court was adjourned.)

18

19

20

21

22

23

24

25

1

2                           C E R T I F I C A T E

3

4            I, Marianne Kusa-Ryll, RDR, CRR, do hereby

5    certify that the foregoing transcript is a true and accurate

6    transcription of my stenographic notes before the Honorable

7    Timothy S. Hillman, to the best of my skill, knowledge, and

8    ability.

9

10

11       /s/ Marianne Kusa-Ryll                    4/25/16

12       Marianne Kusa-Ryll, RDR, CRR              Date

13       Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25