UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(WORCESTER DIVISION)

|  |  |
|---|---|
| G, a 12-year-old minor suing by a fictitious name for privacy reasons, MOTHER, and FATHER, suing under fictitious names to protect the identity and privacy of G, their minor child,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>THE FAY SCHOOL (by and through its Board of Trustees) and ROBERT GUSTAVSON,[1]<br><br>　　　　　Defendants. | Case No. 15-cv-40116-TSH<br><br>**Leave to File Granted on 7/13/2016** |

**DEFENDANTS' REPLY BRIEF IN RESPONSE TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**

Defendants The Fay School, Inc. and Robert J. Gustavson, Jr. (collectively "Defendants") hereby respond to Plaintiffs' Opposition to Defendants' Motion *in Limine* to Exclude Plaintiffs' Expert Witnesses.

**I.   PLAINTIFFS' EXPERTS SHOULD BE BARRED FROM PROVIDING NON-EXPERT TESTIMONY OF A SCIENTIFIC NATURE**

Plaintiffs argue that three of their purported expert witnesses (Dr. David Carpenter ("Dr. Carpenter"), Dr. Jeanne Hubbuch ("Dr. Hubbuch"), and Dr. Martha Herbert ("Dr. Herbert")) should be allowed to provide "non-expert" testimony relevant to certain of Plaintiffs' claims. See Opposition ("Opp."). at 2-6. As an initial matter, this argument has no bearing on the exclusion of these witnesses as experts pursuant to Fed. R. Evid. 702. Nonetheless, in an apparent realization that their witnesses should not be accepted as experts, Plaintiffs are

---

[1] The proper names of Defendants are The Fay School, Inc. and Robert J. Gustavson, Jr.

1

attempting an end-around the rules of evidence to admit testimony of an expert nature through non-expert means by arguing that the rules somehow do not apply to their witnesses (See ECF Doc. 65 at 1). Their efforts should be denied.

Fed. R. Evid. 701 specifically prohibits witnesses from testifying as to "opinions or inferences which are not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Despite this rule, Plaintiffs attached three letters written by their experts which Plaintiffs claim should be admitted as "non-expert" testimony even if Plaintiffs' experts are excluded from testifying as expert witnesses. See Opp. Exhibits 1-3. These letters, however, are based entirely on their medical and scientific opinions concerning EHS, the cause of G's symptoms being the School's Wi-Fi, and the accommodations that they believe the School should provide to G.

More specifically, Plaintiffs argue they should be allowed to elicit non-expert testimony from: (1) Dr. Carpenter about a letter he sent to the School explicitly stating his opinion about the relative medical dangers of wireless router technology being present in schools; (2) Dr. Hubbuch about a letter which explicitly states her medical opinion as to the cause of G's purported symptoms; and (3) Dr. Herbert about a letter containing her medical diagnosis of G, despite Dr. Herbert conceding that she had not performed any evaluation whatsoever on G. See Supp. Exhibit A.[2] Given the nature of these letters, Plaintiffs cannot advance any reasonable argument that would remove the opinions and testimony offered by their witnesses from the realm of "scientific, technical, or other specialized knowledge." Therefore, it is entirely inappropriate for these witnesses to testify as to this information in a lay capacity. See Fed. R. Evid. 701(c); 702.

---

[2] All referenced Supplemental Exhibits are attached hereto.

2

Further, Plaintiffs' assertion that they are not required to disclose non-expert witnesses testimony as of this time is of no avail. First, Defendants requested in discovery that Plaintiffs provide documents concerning communications with Dr. Carpenter, Dr. Hubbuch, and Dr. Herbert. See Plaintiffs' Response to Defendants' Request for Production of Documents at 9-10 (attached at Supp. Exhibit B). Rather than provide all such communications with these witnesses (which would be required if the witnesses were testifying as non-experts), Plaintiffs objected to this request on the grounds that "these requests call for privileged communications with expert witnesses and work product." Id. Thus, Plaintiffs' attempt to obfuscate the information that these expert witnesses will provide is inimical to the nature of the discovery process. Second, Plaintiffs' attorney was very clear on the record that the testimony of each of these three witnesses was going to be limited solely to the opinions set forth in their expert reports, and barred Defendants from asking questions afield of the opinions set forth in their expert reports. During Dr. Carpenter's deposition, Plaintiffs' counsel continually limited Dr. Carpenter's opinions and Defendants' counsel's questioning of Dr. Carpenter about issues outside of his expert report, including in the following exchanges:

> I'll stipulate, we're not going to have him given an opinion on whether George has EHS . . . His testimony, as is in the report and as I designated, if this will help you with focusing your examination, not that it was unfocused, I'm just saying that this will just narrow it, he's going to testify that EHS is a recognized syndrome in certain individuals when they are exposed to WiFi radiation and other types of radiation, that there is – that there's credible scientific data upon which his opinion to that effect is based. He's also testifying, based upon his knowledge and readings, it is medically plausible that, as a general proposition, EHS in some people can be caused by exposure to EMF. Those are the only two things that he's testifying about . . . .

See Attorney Markham's statement at Carpenter Deposition at 68 (attached as Supp. Exhibit C).

> Specifically, and I believe I've characterized them correctly, and I haven't made it more broad or more narrow, but the specifications of his opinion are stated in

    Exhibit 183 in paragraph 2 and then paragraph 4, with modifying paragraph in between. Those are the only two things he's testifying about.

<u>See</u> Attorney Markham's statement at Carpenter Deposition at 69 (<u>Supp. Exhibit</u> <u>C</u>).

| | |
|---|---|
| Mr. Markham: | I just want to – a stipulation can really clarify things, so this is what we're going to offer his testimony on. It's not on the – all the wide-ranging subjects of this morning. It is going to be on Paragraph 2 of this report, as you correctly stated it, and Paragraph 4, as you correctly stated it . . . . All he'll testify about is the symptomatology as describe by the mother, and is iterated in those reports, is consistent with his understanding and his opinion about what EMF can cause in people who are sensitive to WiFi. Those are it. |
| Q: | Is that correct, Doctor? |
| A: | That's correct. Now, I can answer a lot of other questions if I'm asked, but that's what I've been asked to testify to in this case. |
| Q: | Okay. |
| Ms. McKean: | Given, John [Markham], that you've just given me a stipulation, I am going to trust in you that that is not going to go beyond what you just stipulated to? |
| Mr. Markham: | Well, first of all, you can count on my word without having just said that . . . but you can rely on it, yes. |

<u>See</u> <u>Supp. Exhibit C</u> at 125-127.

    Dr. Carpenter was additionally asked about his reliance on the document attached as

Exhibit 1 to Plaintiffs' Opposition:

| | |
|---|---|
| Q: | Before we go to Exhibit 183 [Dr. Carpenters' expert report], let me ask you this question, we looked at Exhibits 182 and 184 [letters by Dr. Carpenter], which were the two letters you wrote – |
| A: | Right. |
| Q: | -- do you plan to rely upon any of the information that's contained in either Exhibit 182 or Exhibit 184 in rendering your opinion during this litigation? |

4

| | |
|---|---|
| A: | Well, I anticipate that my testimony will be entirely based on the issues that are dealt with in my statement 183. |

See Supp. Exhibit C at 70.

Plaintiffs' counsel likewise limited the scope of Dr. Hubbuch's testimony in the following exchange:

| | |
|---|---|
| Q: | And do you have an understanding as to what the Davises are asking for in this case when they ask for a reduced WiFi environment? |
| A: | The exact things that they're asking for, no. |
| Mr. Markham: | Objection, this is beyond her scope, she's not an accommodation expert. |
| * * * | |
| Q: | Well, it's your opinion in Exhibit 213 that when George is exposed to the school's WiFi, "he experiences headaches, dizziness, nausea, tinnitus, and chest pressure," correct? |
| A: | Correct. |
| Q: | And that this is – that's a condition called EHS, is that accurate? |
| A: | Yes. |
| Mr. Markham: | Jaimie [McKean], she does not, in the report, talk about a accommodations. She doesn't. And she's not being offered for that. |

See Hubbuch Deposition at 234-35 (attached at Supp. Exhibit D).

As to Dr. Herbert's testimony, Mr. Markham stated:

If what you are asking about is the same thing we went through yesterday about opinions with respect to whether the accommodations were reasonable, she's not going to be talking about accommodations, and I will so stipulate.

See Herbert Deposition at 250-251 (attached at Supp. Exhibit A).

Simply put, Plaintiffs cannot have it both ways. If they wish to put forth these individuals as both expert and lay witnesses, then they cannot both shield their "experts" by denying Defendants discovery and use them as a sword to advance their claims.

## II. Plaintiffs Mischaracterize Dr. Foster's Deposition Testimony and Selectively Quote Statements Attributable to Him To Mislead the Court

In an attempt to give credibility to the highly questionable pseudo-science they advocate, Plaintiffs selectively quote the deposition testimony of Defendants' expert, Dr. Kenneth Foster ("Dr. Foster")). Plaintiffs grossly mischaracterize a media report of a recent scientific study[3] (the full results of which have not yet been released) to give the impression that Dr. Foster has changed his views concerning his position with respect to the connection between biological effects and low-level EMF exposure. See Opp. at 13-15. Plaintiffs' misleading arguments should be rejected.

Specifically, Plaintiffs reference non-sworn quotes attributed to Dr. Foster in a May 27, 2016 IEEE Spectrum article about the *preliminary* findings from the NTP Study, to suggest that Dr. Foster has changed his view on the biological effects of exposure to EMF from Wi-Fi. See Opp. at Exhibit 13. Plaintiffs, however, misstate Dr. Foster's view.

First, Plaintiffs attempt to mislead this Court into believing that the NTP Study somehow refutes Dr. Foster's testimony, when in fact it does no such thing. Contrary to Plaintiffs' statements in their Opposition, the NTP study did not involve EMF exposure from Wi-Fi. The exposure the rats were subjected to in the NTP Study were significantly higher than the low-level exposure that any human experiences from Wi-Fi by many orders of magnitude. Dr. Foster testified as such at his deposition in the following exchange:

---

[3] A study was recently conducted by the National Toxicology Program, in concert with the Illinois Institute of Technology, exploring the possible connection between exposure to radio frequency radiation emitted by cellphones to the incidence of cancers in rats (the "NTP Study").

6

> Q. Now, Mr. Markham asked you about an ongoing study with animals at the Illinois Institute of Technology. Do you remember that?
>
> A. Yes.
>
> Q. Are the RF levels that are being studied in that particular study comparable to the Wi-Fi levels?
>
> A. No. They actually have levels comparable to interaction with exposure limits. They're vastly higher than [those] associated Wi-Fi exposure.
>
> Q. Regardless of what the results of that study is (sic), will the results change your opinion at all in [this] case?
>
> A. In this case, no. The exposure level is totally different.
>
> Q. So even if that study ultimately found signs – some connection between the RF levels that they're studying and cancer, that wouldn't change your opinion in [this] case?
>
> A. Correct.

See Foster Deposition at 192-93 (attached at Supp. Exhibit E).

Dr. Foster also made it clear in the article cited by Plaintiffs (to support their argument that Dr. Foster changed his position) that the exposure levels used in the NTP Study were much higher than safety exposure limits. Notably, the article states that the animals in the study were exposed to "6 W/kg levels," while Dr. Foster noted in the article safety levels well below that of "0.4 W/kg and … 0.8 W/kg."[4] Given Dr. Foster's deposition testimony and his statements in the referenced article, Plaintiffs' suggestion that the NTP Study is "contrary to what Dr. Foster had just proclaimed" is disingenuous at best, and more appropriately characterized as deceptive. There remains not a single study that shows any connection between low-level exposure to EMF (such as that associated with Wi-Fi) and any biological effects in humans.

---

[4] As noted in Dr. Foster's expert report, the exposure levels of the Wi-Fi at the School are about 10,000 times lower than the safety exposure limits.

Second, Plaintiffs selectively quote the non-sworn statements that the author of the article attributes to Dr. Foster, but *ignore* the comment to the article provided directly by Dr. Foster wherein he states as follows:

> [s]o the results are certainly worth examining carefully, but will not support strong conclusions about RF fields and cancer. We will have to wait until the full results are made [public], supposedly in 2017 and see what the health experts say after they have had a chance to examine the full results . . . . These results will certainly change the rhetoric, but as far as changing public policy . . we shall have to wait until the health agencies have had a chance to evaluate the study. I caution readers not to make too much of these findings, certainly not in the fragmentary form in which we have them at present.

See Supp. Exhibit F.[5] This comment was provided contemporaneously with the publishing of the article, and well before Plaintiffs submitted their Opposition brief.

In sum, Dr. Foster's testimony remains unchanged and Plaintiffs' use of the cited article to support a contrary argument can only be explained as an attempt to mislead this Court.[6]

## III.     CONCLUSION

For the reasons stated herein, and the reasons set forth in its Motion *in Limine* to Exclude Plaintiffs' Expert Witnesses, Defendants respectfully request this Court enter an order excluding the testimony and opinions of Dr. Carpenter, Dr. Hubbuch, Dr. Herbert, Dr. Karl Maret, and Robert Bowdoin.

---

[5] It is worth noting that this is the same sort of "cherry-picking" that Plaintiffs' expert Dr. Carpenter employs to conveniently ignore information that is contrary to or raises questions about their naked advocacy.

[6] The notion that Plaintiffs are immune from criticism because they were technically accurate in the language they chose to quote (See ECF Doc. 65 at 2) ignores the fact that they selectively quoted testimony out of context to give the false impression of recanted testimony that Dr. Foster did not give. This effort is emblematic of Plaintiffs' strategy in this case and should be rejected.

        Respectfully submitted by,

        Defendants,
        THE FAY SCHOOL, INC. and ROBERT J.
        GUSTAVSON, JR.,

        By their attorneys,

        /s/ Jaimie McKean
        Sara Goldsmith Schwartz (BBO No. 558972)
        Jaimie A. McKean (BBO No. 657872)
        Brian M. Doyle (BBO No. 680704)
        Sarah H. Fay (BBO No. 690660)
        SCHWARTZ HANNUM PC
        11 Chestnut Street
        Andover, MA 01810
        Phone: (978) 623-0900
        Fax:  (978) 623-0908
        schwartz@shpclaw.com
        jmckean@shpclaw.com
        bdoyle@shpclaw.com
        sfay@shpclaw.com

Dated:  July 13, 2016

## **CERTIFICATE OF SERVICE**

I, Jaimie A. McKean, hereby certify that on the 13th day of July 2016, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

 John J.E. Markham, II
 Markham & Read
 One Commercial Wharf West
 Boston, MA 02110

        /s/ Jaimie McKean