UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(WORCESTER DIVISION)

|   |   |
|---|---|
| G, a 12-year-old minor suing by a fictitious name for privacy reasons, MOTHER, and FATHER, suing under fictitious names to protect the identity and privacy of G, their minor child,<br><br>     Plaintiffs,<br><br>v.<br><br>THE FAY SCHOOL (by and through its Board of Trustees) and ROBERT GUSTAVSON,[1]<br><br>     Defendants. | Case No. 15-cv-40116-TSH |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE PLAINTIFFS FROM USING PSEUDONYMS

On July 21, 2016, the Court in the above-captioned matter issued a notice to all parties that it has "received several requests from non-parties who wish to attend the proceedings in this case. Those requests ask the court to turn off the courtroom Wi-Fi because the requesting parties have EHS." ECF No. 73. In light of this notice, it is clear that members of the public will be attending the upcoming hearings (and possible trial) in this matter. As a result, pursuant to Rules 10(a) and 17(a)(1) of the Federal Rules of Civil Procedure, Defendants, The Fay School, Inc. (the "School"), and its Head of School, Robert J. Gustavson ("Mr. Gustavson")[2], hereby seek to preclude Plaintiffs Mother and Father[3] (collectively the "Parents") from using pseudonyms in this action. The Court should grant this Motion because the Parents never sought permission

---

[1] The proper names of the Defendants are The Fay School, Inc. and Robert J. Gustavson, Jr.

[2] The School and Gustavson are collectively referred to herein as "Defendants."

[3] Plaintiff "G" is a minor, and therefore, in accordance with Court Rules, Defendants will continue to use the abbreviation "G," rather than his full name in all pleadings filed with this Court.

1

from this Court to use pseudonyms, and have previously (and repeatedly) disclosed Plaintiffs' identities in public forums, including to an administrative agency in a prior action, several public agencies in connection with public hearings, and to a parents' association and its members, and other third parties. Therefore, Plaintiffs have no basis for seeking to proceed anonymously, and Defendants ask this Court to allow this Motion and preclude Plaintiffs from continuing to proceed using pseudonyms.[4]

## I. INTRODUCTION

Plaintiffs have brought this action against Defendants based on allegations that the School's infrastructure for providing wireless internet ("Wi-Fi") access is somehow causing Plaintiff G to suffer headaches and other symptoms. Although Plaintiffs have failed to include their names in the pleadings in this case, and appear to be attempting to proceed anonymously, Plaintiffs never sought permission from this Court to proceed anonymously. Further, while they use the pseudonyms "Mother" and "Father" in their pleadings, the Parents have publicly and repeatedly disclosed their names in many other forums, including in a Charge against the School with the Massachusetts Commission Against Discrimination ("MCAD") filed in March 2015, in which the Parents disclosed G and their full names *over fifty times* (see Exhibit 1), and in Mother's campaign and advocacy efforts to have Wi-Fi removed from schools, which began months before the Parents ever raised concerns about the alleged effects that the School's Wi-Fi was having on their son, G.[5] Through these actions, Plaintiffs have attempted to hide behind

---

[4] In further support of this Motion, Defendants are submitting, via hand-delivery, a series of exhibits demonstrating the repeated public disclosure of the Plaintiffs' identities. Despite being under no obligation to do so, Defendants have filed via ECF redacted versions of these exhibits, although many are already publically available, and all contain Plaintiffs' full names. Defendants, however, will provide the Court (via a hand-delivered courtesy copy) with all the unredacted versions, so the Court can see the full extent of Plaintiffs' public disclosure of their identities.

[5] Given Mother's ongoing advocacy efforts, which have included numerous conversations with individuals who believe that they, like G, are sensitive to Wi-Fi, it is likely that Plaintiffs have already disclosed their identities to many, if not all, of the third parties who have requested that this Court turn off the Wi-Fi, so that they can attend the

their anonymity while they publicly air their grievances against the School, openly discuss this case, and make misrepresentations to the School community and in the media about the School and the circumstances giving rise to this action. During the early stages of this litigation, Defendants have respected the privacy of a minor child. As this matter is now involved in public hearings, and is heading towards trial, however, the Parents should be required to use their full legal names. Failure to grant this relief would prejudice the Defendants by allowing Plaintiffs to continue to use their anonymity as both a sword and a shield, contrary to the Rules of Civil Procedure, and antithetical to the constitutional preference for open and public judicial proceedings.

## II.   BACKGROUND

### A.   The Parents' Anti-Wireless Advocacy Efforts Before Raising Any Concerns Regarding G – All While Using Their Full Names

In the instant case, the Parents claim that their son G suffers from Electromagnetic Hypersensitivity Syndrome ("EHS"), a disorder that allegedly causes him to experience physical symptoms (such as headaches, dizziness, and fatigue) when he is exposed to low-level electromagnetic fields ("EMF") from the School's wireless network. The Parents first brought this belief to the attention of the School in August 2014.

Long before the Parents raised any concerns about G to the School, however, the Parents came to believe that Wi-Fi was dangerous and embarked on a campaign to eliminate Wi-Fi from schools – *all while openly using their full names*. More specifically, nearly twenty-two (22) months before raising any concerns to the School about her son G, Mother, in October 2012, wrote to the School claiming that she believed "[t]here is a direct link to illness and wi-fi radiation…," and offered to donate Pong cases for iPads, which she stated would reduce EMF

---

upcoming court hearings.

coming from such iPads. See Exhibit 2. In furtherance of their belief that Wi-Fi was dangerous, the Parents removed all Wi-Fi from their home, along with having their smart meter removed and other electronics that operated on wireless technology. At the time, the Parents told G that they were removing the Wi-Fi from the family home because it was bad for him.

In addition to removing wireless technology from the family home, Mother embarked on a business venture that she hoped would result in the development of a case for iPads, which could reduce EMF coming from the devices, and which she could then market and sell. Ultimately, Mother was not able to develop such a product to market.

On March 31, 2014, Mother (while openly using her full name) wrote to the Director and Principal Investigator at the Center for Family and Community Health of the University of California Berkeley Prevention Research Center seeking his help in her "PSA campaign" to raise awareness about her concerns with Wi-Fi in schools. See Exhibit 3. In that email, Mother wrote that she was "working on a PSA campaign targeted to parents and children/schools" and "working on a letter to [her] children's school system (private) as well as form letters for the PSA website…." See id. Mother also wrote that she had been talking with other experts in the field "about running such a campaign" and hoped to involve broadcasters and "very well respected celebrities" in her campaign. See id.

On April 13-14, 2014, Mother emailed with an anti-Wi-Fi advocate to obtain ideas on how best to craft her campaign.[6] See Exhibit 4. In her email, Mother admitted to this advocate that she first became interested in this topic through her efforts to develop her own mitigation cases, and was in talks with another advocate to bring "awareness to young parents via a carefully crafted PSA and information to young parents with Pedi offices nationwide." Id. at 2.

---

[6] This advocate has identified herself as the co-founder of the National Assn. for Children and Safe Technology, which, according to its website, has a primary mission of changing technology in schools to "100% wired technology."

In early April 2014, Mother began reaching out to various individuals at the School, including the School's nurse and a trustee of the School, to express her belief that the Wi-Fi in schools created a potential danger to students from EMF. At that time, Mother did not disclose any medical issues being suffered by her son, G.

Thereafter, Mother contacted School administrators and demanded a meeting to discuss her concerns about Wi-Fi. The School's Head of School, Mr. Gustavson, along with the School's Director of Operations and the Director of Information Technology met with the Parents on May 12, 2014. Although the Parents expressed concerns about Wi-Fi in general and requested that the School remove the Wi-Fi and instead wire the classrooms, the Parents never mentioned any medical concerns being suffered by her son, G, or any other children at the School.

Rather than waiting for the decision of the School administrators, Mother began emailing other parents at the School and several members of the Parents' Association to gain other parents' support in her campaign to remove Wi-Fi from the School.[7] See Exhibits 5 & 6. Mother also reached out to an advertising agency to obtain assistance with her anti-Wi-Fi campaign. See Exhibit 7. In doing so, Mother never expressed any concern about being publically identified and did not take any efforts to conceal her or her family's identity.

After listening to the Parents' concerns, consulting with organizations that work with other private independent schools, and doing their own research on the topic, the School administrators determined that there was no legitimate scientific support to support a belief that the School's Wi-Fi system (which is similar in kind to Wi-Fi systems installed in Schools and businesses across the country) was in any way harmful. As a result, Mr. Gustavson notified the Parents that there was inadequate support for the removal of Wi-Fi from the School. Mr.

---

[7] The Parents' Association declined to participate in Mother's anti-Wi-Fi campaign.

Gustavson also promised to "adhere to guidelines from all relevant regulatory agencies" and to monitor and comply with any changes made by such agencies.

Apparently unsatisfied with the School's response, on June 2, 2014, Mother wrote to the CEO of Canadians for Safe Technology and stated that although she had "recently been caught up in presenting the WIFI concern to [her] children's private school," she wanted to find time to discuss with him "another effort [she is] managing - a PSA on wireless device safety." See Exhibit 8. Mother further wrote that she had "been working on a strategy to organize and unify the message of science and medical professionals to get it to the important demographic - young parents and educators." See id. Mother then stated: "This is a long term PSA strategy (still in development) that is being crafted cautiously." See id. Again, Mother did nothing in this communication to conceal her or her family's identity. See id.

### B. The Parents' Continued Anti-Wireless Advocacy After Claiming G's Sensitivity To Wi-Fi – Without Any Effort To Conceal Their Identity

In June 2014, Mother reached out to a doctor in Texas, Dr. William Rea ("Dr. Rea"),[8] who claims to treat patients with EHS looking for a referral to a local doctor for her son, G. Dr. Rea recommended Dr. Jeanne Hubbuch ("Dr. Hubbuch"), a doctor in Watertown, Massachusetts.[9] On June 24, 2014, Mother emailed Dr. Hubbuch's about symptoms she stated her son G was exhibiting, including headaches, dizziness, and ringing ears. See Exhibit 9. Mother informed Dr. Hubbuch that she believed these symptoms were due to the School's Wi-Fi signals (and a recent upgrade of the School's wireless network from 2.4GHz to 5GHz). See id.

---

[8] In 2007, Dr. Rea was charged by the Texas Medical Board with, among other things, using pseudoscientific test methods, providing "nonsensical" treatments, and representing himself certified by a board that is not recognized by the American Board of Medical Specialties. Dr. Rea reached a settlement with the Texas Medical Board in 2010, which allowed him to retain his medical license.

[9] Although Dr. Hubbuch is certified by the American Board in Family practice, she also claims a certification in environmental medicine. This supposed certification comes from the American Board of Environmental Medicine, which is not a recognized specialty board.

Rather than asking Dr. Hubbuch to examine G (and make a diagnosis based on that examination), Mother asked Dr. Hubbuch to make an appointment with only Mother (without G present), and then to write a "medical letter" about G to the School. See id. Dr. Hubbuch agreed, and after meeting with Mother only, and never meeting nor evaluating G, Dr. Hubbuch diagnosed G with "emf sensitivity," and wrote a letter to the School (dated August 7, 2014) stating that in her opinion G was "being adversely affected by prolonged exposure to WIFI at school." See ECF No. 43 at p. 38-40.

In order to assess G's need for an accommodation and to evaluate the alterations the School was being asked to make to its educational environment, the School asked the Parents to provide additional medical information. Ignoring the School's reasonable request for additional medical information, Plaintiffs failed to provide any documentation to the School demonstrating that the removal of the School's Wi-Fi would alleviate G's individual symptoms, but instead, continued to embark on their anti-Wi-Fi campaign.

For example, the Parents reached out to medical professionals and purported "experts" to solicit their support of their advocacy efforts. As a result, in July and August 2014, the School received unsolicited letters from four individuals – Dr. Steven Sinatra, Olle Johansson, Dr. Martin Blank, and Dr. David Carpenter – who expressed concern over the School's Wi-Fi system.[10] See ECF No. 43 at p. 49-60. The language used in these letters, made it clear that the Parents had openly disclosed the Parents' concerns about G's exposure to Wi-Fi. More specifically, Dr. Carpenter wrote of his "concern that students at your school are experiencing

---

[10] While Mother has tried to deny that she asked these purported experts to write to the School, Mother wrote to a fellow parent in an email dated July 22, 2014 (in which she freely used her name and talked openly about her son's alleged condition), and stated the following (regarding those letters): "I do have several dr's writing letter[s] to the BOT [Board of Trustees] as we speak. It will be assumed that I put them up to it but…what else can I do sit and wait for Rob [Gustavson] to become a scientist and medical expert.?! … Can't say they were not warned." See Exhibit 10.

hypersensitivity symptoms ….." See id. at 50. Dr. Blank wrote that "[i]t has been brought to my attention that school children have become symptomatic." See id. at 52. Mr. Johansson wrote that "[i]t has been brought to my attention that children in your school are physically being impacted by radiation. . . ." See id. at 56. Dr. Sinatra stated that he was "writing on behalf of concerned parents …." See id. at 54. No parent, other than the Plaintiffs, complained to the School about their child exhibiting any symptoms because of the School's Wi-Fi.

In an August 5, 2014 email, Mother wrote to other parents at the School stating that she was "looking for parental support and concern expressed by others – especially if you have seen symptoms in your child . . . ." See Exhibit 11.[11] This email contained literature about Wi-Fi in schools and correspondence that was sent to the School from medical professionals solicited by Plaintiffs (including the letters from Drs. Sinatra, Blank, and Carpenter). Around the same time, Mother wrote to the former Head of the School to discuss her "son's health issue." See Exhibit 12. Mother conceded that her efforts have been public when she writes that "[y]ou may have heard our concerns relate to the use of Industrial Wi-Fi equipment in the Root Building and other forms of Wi-Fi throughout the campus." Id. In writing these two emails, Mother never tried to conceal her identity.

In emails dated August 9-11, 2014, Mother (using her full name) corresponded with another anti-Wi-Fi advocate about her efforts to remove Wi-Fi from a different school and asked for advice on the best course of action the Parents should take against the School.[12] See Exhibit 13. In response, this advocate recommended that the Parents bring a lawsuit. See id.

---

[11] The attached email is just a sample of the dozens of emails Mother sent to other parents at the School about her son's condition and her dispute with the School. In none of those emails did Mother try to conceal her or her family's identity.

[12] This advocate, Deborah Kopald, has a post at Public Citizen's Consumer Law and Policy Blog, discussing alleged health problems associated with Wi-Fi.

In August and September 2014, Mother sent emails to a number of parents at the School regarding her dispute with the School and her son's alleged condition. See Exhibits 14 & 15. Mother even invited these parents to her home for a meeting to have "an open discussion about the concern and the empowering solutions we can propose to [sic] school for safer use of technology." See Exhibit 15. Mother attached a copy of Dr. Hubbuch's August 7, 2014 letter to these emails, and made no effort to conceal her son's identity, instead writing that the attached letter was a "medical letter written to the school by my child's doctor." See Exhibits 14 & 15.

In addition, Mother (using her full name) corresponded with the Parents' Independent School Network (PIN), to try to get them to sponsor a discussion on Wi-Fi safety at the local library. See Exhibit 16. In doing so, Mother misrepresented that she was acting on behalf of the School and the School's Parents' Association, which she was not. When the Parents' Association learned of this misconduct, they removed Mother from her role in the Parents' Association and notified PIN that neither they nor the School were sponsoring the event. See Exhibit 17.

### C. The Parents File An MCAD Charge Using Their Real Names

On or about March 19, 2015, the Parents filed a Charge of Discrimination with the MCAD (the "Charge"). See Exhibit 1. Although they referred to their minor son by his initials ("G.E.D") in the Charge, Mother and Father filed the Charge using their own full legal names in both the caption and in their allegations in the Charge. See id. Also, the Parents attached fourteen (14) exhibits to the Charge, all of which contain the Parents and G's full legal names. For example, in Exhibit 5 of the Charge, Plaintiffs attached an unredacted email chain containing a message received from the School stating "[s]uffice it to say that based upon the best available information, we do not share your conviction or view that WiFi should be removed from Fay

School. Current scientific research does not support that conclusion and even Dr. Jeanne Hubbuch, who wrote to me regarding your son, [G's full name], concedes that there are no conclusive studies." Earlier in the email chain, Mother (using her real first name) stated that her "youngest child" has "symptoms" that "indicate an increasing sensitivity upon exposure to Wi-Fi at school." In Exhibit 7 of the Charge, Plaintiffs attached an unredacted letter from their legal counsel that used Plaintiffs' full names and specifically used the full name of Plaintiff G. In all, Plaintiffs' family and/or individual names are mentioned *over fifty (50) times* in the Charge and attached exhibits. As a result, Plaintiffs clearly made no effort to conceal their identity in filing the Charge with the MCAD.[13]

### D. The Parents Other Advocacy Efforts Using Their Real Names

1. Mother spoke publically about her Wi-Fi concerns at public hearings before the Southborough Board of Health.

Plaintiff Mother used her full legal name to publicly address the Town of Southborough Board of Health ("BOH") about Wi-Fi in schools. Specifically, as reflected in the June 18, 2015 BOH minutes, Mother sought, and was granted, the right to be heard at public hearings before the BOH. See Exhibit 18 at 2 (contains Mother's full name).[14] In July 2015, Mother also had email correspondence (using her full name) with a member of the Southborough BOH that included information about the various conferences and meetings where she planned to attend or speak. See Exhibit 19. *After* filing a federal lawsuit anonymously in August, in September Mother continued to press the Southborough BOH using her real name. The September 2, 2015 BOH minutes reflect that Mother (using her real name) and a friend of hers spoke to the BOH about concerns regarding wireless internet and its effects on children's health. See Exhibit 20 at

---

[13] On May 12, 2015, the MCAD dismissed the Charge for lack of jurisdiction.

[14] All of the minutes (with Mother's full name) from the referenced Southborough BOH meetings are publicly available on the Town of Southborough's website.

3 (contains Mother's full name). The October 28, 2015 BOH minutes again reflect that Mother (using her real name) addressed the BOH about electromagnetic sensitivity. See Exhibit 21 at 3. The October 28, 2015 minutes further reflect that Mother would be speaking with the Central Massachusetts Chapter of the Association of Public Health Nurses the following January. Id. In January 2016, Mother addressed the Nurses' Association, again using her real name. See Exhibit 22.

        2.       <u>Mother has engaged in a public campaign to pass legislation regarding Wi-Fi in schools.</u>

Mother's advocacy efforts included her providing public testimony at a July 28, 2015 hearing of the Committee of Public Health in the Massachusetts State Senate. Mother appeared, using her real name, to voice her support for Senate Bill S. 1222 (an act creating a special commission to study electric and magnetic fields). Prior to giving her testimony, Mother met with representatives from the Massachusetts State Legislature, and sent multiple emails to her friends and supporters asking them to reach out directly to the legislation on her behalf. See Exhibit 19. She did all of this using her full name.

Mother also emails and met in December 2015 with legislators to discuss her support for Senate Bill S. 1222. See Exhibit 23 (without attachments). Again, she did this using her full legal name.

        3.       <u>Mother has used the press to generate publicity for her anti-Wi-Fi campaign.</u>

As recently as March 11, 2016, blogger Beth Melo, writing on mysouthborough.com, published an article titled "Fay accused of retaliating against family suing school," and a "Q&A with Mother," in which Mother described in detail the allegations giving rise to G's purported disability, and misrepresented the School's response to Plaintiffs' specious claims. Melo's

article states that "[t]he mother of G *reached out to me* to share the allegations and her family's story with readers."  Exhibit 24 (emphasis added).[15]  In the "question and answer" piece associated with Melo's March 11th post, Mother publicly named Defendant Gustavson, and publicly identified (by name) other School personnel.  Mother further described her efforts to communicate with third parties, including members of the Board of Trustees, other parents in the School community, and the School's former headmaster.  In doing so, Mother took great effort to generate publicity for her cause at the expense of the School's reputation while hiding behind her own anonymity.

### III.   ARGUMENT

#### A.   Plaintiffs Should be Precluded From Proceeding Using Pseudonyms

The Federal Rules of Civil Procedure, constitutional considerations of fairness, and the preference for open and public judicial proceedings require that the Parents prosecute this action using their full legal names.  See F.R.C.P. Rule 10(a) (a "complaint must name all the parties"); F.R.C.P. Rule 17(a)(1) ("[a]n action must be prosecuted in the name of the real party in interest."); MacInnis v. Cigna Grp. Ins. Co. of Am., 379 F. Supp. 2d 89, 90 (D. Mass. 2005) (stating plaintiffs have burden to prove that they have "a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings."); Doe v. Bell Atl. Bus. Sys. Serv., 162 F.R.D. 418, 420 (D.Mass.1995) (holding there is a presumption in favor of disclosure that a party can only rebut by demonstrating that the need for confidentiality outweighs the public interest in disclosure).[16]  Aside from failing to seek

---

[15]  A link to the mysouthborogh.com blog and Q&A with Mother is publicly available at the following link: http://www.mysouthborough.com/wp-content/uploads/2016/03/My-Southborough-QA-with-Mother-of-G.pdf

[16] Local Rule 5.3(a)(2), which requires the use of initials in filings that reference minor children, does not apply to prohibit the use of the Parents' full legal names.  This local rule applies only to court filings and is intended to "promote electronic access to case files while also protecting personal privacy and other legitimate interests."  See L.R. 5.3(a).  It requires the partial redaction of social security numbers, financial account numbers, and birthdays,

the Court's permission to proceed anonymously, Plaintiffs have not offered a single reason why their personal preference for confidentiality outweighs the public interest in disclosure, and for this reason alone, Defendants' motion should be granted.

In addition, the Parents cannot demonstrate that any extenuating or special circumstances exist that would justify allowing them to proceed anonymously. Courts have limited a party's right to proceed anonymously to exceptional cases where the party demonstrates "that disclosure would result in harassment, the threat of physical harm, or other similar consequences." Doe v. Prudential Ins. Co. of America, 744 F. Supp. 40, 41 (D.R.I. 1990) (denying parents' request to proceed under fictitious names, which would have withheld identities of parents and their son, where parents failed to demonstrate that disclosure of their names would result in harassment, threat of physical harm, or other similar consequences); see also MacInnis, 379 F. Supp. 2d at 90 (finding plaintiff who claimed she suffered from "major depression and anxiety" failed to "overcome the constitutional preference for openness in judicial proceedings" and could therefore not proceed using pseudonyms). Courts have also considered allowing a party to proceed anonymously where (1) plaintiffs are challenging governmental action; (2) plaintiffs would be required to disclose information of the utmost intimacy; and (3) plaintiffs would be compelled to admit their intention or desire to engage in illegal conduct). See Bell Atl. Bus. Sys. Serv., 162 F.R.D. at 420. In the instant matter, the first and third Bell Atlantic factors are simply inapplicable to this case,[17] and there is no indication whatsoever that Plaintiffs would be

---

and limits references to minor children to the use of their initials in "*filings submitted to the court*, including exhibits thereto." (emphasis added). Defendants have complied, and will continue to comply, with this local rule, however, as stated herein, Defendants should not be precluded from using and making reference to each of the Plaintiffs (including G) using their real names during the course of trial.

[17] This case does not involve any governmental action, nor are Plaintiffs being compelled to admit their intention or desire to engage in illegal conduct.

subjected to harassment, threats of physical harm, or any similar consequences if their identities are disclosed.

To the extent the Plaintiffs are concerned about the disclosure of "information of the utmost intimacy," that concern is also not applicable to this case. First, G's purported health condition, and the need for its accommodation, is the central issue that Plaintiffs have raised in this case. Second, a sensitivity to Wi-Fi pales in comparison to other cases in which the court rejected a party's desire to keep intimate details private. See Bell Atl. Bus. Sys. Serv., 162 F.R.D. at 422 (denying pseudonymity in case involving alleged sexual harassment and discrimination and holding that "[p]laintiff's fundamental concern seems to be embarrassment, which is not, in itself, grounds for proceedings under a pseudonym"); see also Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 452-53 (D. Mass. 2011) (denying request by parties to protect disclosure of their identities in lawsuit involving homosexual pornography, as alleged reputational harm and intrusion to parties' privacy not grounds for allowing them to proceed anonymously).

Moreover, courts that have addressed this issue in the school context have rejected attempts by parents of minor children to proceed anonymously where the parents are unable to demonstrate that they or their child would suffer any harm if identified. See Doe v. Beaumont Independent School District, 172 F.R.D 215, 217 (E.D.Tx. 1997) (holding parents and minor students were not entitled to proceed anonymously against school district where no threats of violence shown even though local citizens displayed disapproval and frustration about plaintiffs bringing suit); Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1043-46 (9th Cir. 2010) (denying minor children's request for anonymity where their unreasonable fear of severe harm based on filing suit against private schools for allegedly race-based admissions

14

policies, did not outweigh public interests in open proceedings); Doe v. Unified School District 331, No. 11-1351-KHV, 2013 WL 1624823, *2 (D. Kan. Apr. 15, 2013) (refusing to allow alleged victims of child sexual harassment by a teacher to proceed against their former high school using pseudonyms because fact that plaintiffs may suffer some personal embarrassment does not warrant allowing them to proceed anonymously). Indeed, there are numerous instances where a parent has brought an action under the ADA on behalf of their minor child and, at minimum, used the parents' real name. See e.g., M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico, 528 F.3d 9 (1st Cir. 2008) (named parent of minor child brought various claims against school, including an ADA claim); Thomas v. Springfield Sch. Comm., 59 F. Supp. 3d 294, 306 (D. Mass. 2014) (same); Pollack v. Reg'l Sch. Unit 75, 12 F. Supp. 3d 173, (D. Me. 2014) (same); Mann v. Louisiana High Sch. Athletic Ass'n, 535 F. App'x 405 (5th Cir. 2013) (same); Pagan-Negron v. Seguin Indep. Sch. Dist., 974 F. Supp. 2d 1020 (W.D. Tex. 2013) (same); Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty., Okla., 960 F. Supp. 2d 1254 (N.D. Okla. 2013) (same). There is absolutely no justification for Plaintiffs to proceed pseudonymously, and they should be compelled to use their full legal names for the duration of this litigation.

    **B.    Plaintiffs Are Precluded From Using Pseudonyms Because They Have Publicly Disclosed Their Identities In Connection With Their Anti-Wi-Fi Advocacy Efforts**

Plaintiffs should not be allowed to proceed anonymously because they have previously, and repeatedly, disclosed their own identities publicly. This Court has held that a party's previous disclosure of its identity will render any effort to proceed anonymously "effectively moot." See Bell Atl. Bus. Sys. Serv., 162 F.R.D. at 422 (holding plaintiff's request for anonymity was "effectively moot" because her true identity was previously revealed to the EEOC and MCAD in connection with complaints with those agencies).

Here, Plaintiffs desire for anonymity is "effectively moot" because of myriad disclosures of Plaintiffs' true identities, including a public filing with a state agency. More specifically, prior to filing the federal lawsuit, Plaintiffs engaged in an aggressive and very public campaign to raise awareness of EHS and drum up support for their cause. They reached out to countless members of the School community, harassed its faculty and trustees, and contacted multiple third parties, including medical doctors and purported "experts," to discuss their concerns, G's health, and their beliefs about Wi-Fi in schools. See Exhibits 3-17. At no time did Plaintiffs attempt to conceal their identities or express any concern about public disclosure. See id. Moreover, fatal to their desire to remain anonymous, Plaintiffs filed an MCAD Charge which was captioned in the real names of Mother and Father, and used all of Plaintiffs' real full names (including G's name) throughout the exhibits *over 50 times*. See Exhibit 1. The Charge was predicated on the exact same facts as the current action and a cursory review of the Second Amended Complaint and the Charge clearly demonstrates that the named parties in the Charge are the very same individuals using pseudonyms in this action. In addition, on July 28, 2015, Mother appeared before the Massachusetts Senate Committee on Public Health to voice her support for proposed legislation that would create a special committee to study the health impacts of electromagnetic fields. See Exhibits 19 & 23. She provided public testimony using her real, full name, and addressed the very same issues that have given rise to Plaintiffs' purported claims.

Further, even after filing the lawsuit anonymously, Mother appeared before the Town of Southborough Board of Health using her real full name to continue her advocacy and discuss the issues giving rise to this lawsuit. See Exhibits 18, 20, & 21. Thus, there has been no attempt by Plaintiffs to remain confidential, except within the context of this litigation. Accordingly, there is no need for continued confidentiality. See Doe v. Word of Life Fellowship, Inc., No. 11-

16

40077-TSH, 2011 WL 2968912, at *2 (D. Mass. July 18, 2011) (holding motion to proceed under pseudonym was moot because moving party's identity had previously been disclosed to public agencies); Doe v. Univ. of R.I., 8 Fed. R. Serv.3d 366, at *3 (D.R.I. 1993) (denying request to proceed under pseudonym because moving party's identity was disclosed in prior litigation).

### C. Defendants Will Suffer Prejudice if Plaintiffs Are Allowed to Proceed Anonymously

Allowing Plaintiffs to continue to prosecute this case would prejudice the School's defense of this action in several ways. First, proceeding using pseudonyms would be logistically prejudicial to Defendants by inhibiting their ability to fully and effectively cross-examine third party witnesses who spoke with Plaintiffs, and present relevant evidence to witnesses and experts. See e.g., Lindsey v. Dayton-Hudson Corp., 592 F. 2d 1118, 1125 (10th Cir. 1979). Further, by proceeding anonymously, Defendants are deprived of the possibility of having third parties with relevant information learn about the case and offer to provide that information to the Defendants without prompting. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 596-97 (1980) (Brennan, J., concurring) ("Public trials come to the attention of key witnesses unknown to the parties.").

Second, by allowing Plaintiffs to continue to proceed pseudonymously, they are being afforded the ability to damage the reputation of the School and its Headmaster while remaining themselves unscathed. It is fundamentally unfair to allow Plaintiffs to "use [their] privacy interests as a shelter from which [they] can safely hurl these accusations without subjecting [themselves] to public scrutiny, even if that public scrutiny includes scorn and criticism." Doe v. Indiana Black Expo., Inc., 923 F. Supp. 137, 142 (S.D. Ind. 1996); see also Bell Atl. Bus. Sys. Serv., 163 F.R.D. at 421 ("[B]ecause the defendants were publicly named in the complaint they

had been exposed to reputational harm and embarrassment, and that fairness dictated revelation of the plaintiff's identity as well."); see also Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffee, 599 F. 2d 707, 713 (5th Cir. 1979) ("Basic fairness dictates that those among the defendants' accusers who wish to participate . . . as individual party plaintiffs must do so under their real names."). This prejudice is especially highlighted now that Plaintiffs have apparently invited third parties who claim to have EHS to attend the public hearings and view the proceedings in this case. Having offered no justification for proceeding using pseudonyms, having failed to seek the court's permission to proceed anonymously, and having repeatedly and publically disclosed their identities, Plaintiffs should be compelled to use their full legal names in their continued prosecution of this matter.

Finally, Courts have refused to allow parents to hide behind their minor children for claims that belong only to the parents. See Beaumont Independent School Dist., 172 F.R.D. at 216 ("[T]his Court cannot condone the practice of naming minors as plaintiffs and proceeding anonymously based on their vulnerability, when their parents have standing to sue on their own behalf for the same alleged violations."). Here, the Second Amended Complaint alleges a contract claim (Count III) and misrepresentation (Count IV) in connection with purported breaches of the School's Student and Parent Handbook, and seeks damages for, *inter alia*, return of the tuition money that *Mother* and *Father* (and not G) paid to the School.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Preclude Plaintiffs' From Using Pseudonyms should be allowed.

        Respectfully submitted by,

        Defendants,
        THE FAY SCHOOL, INC. and ROBERT J.
        GUSTAVSON, JR.,

        By their attorneys,

        /s/ Jaimie A. McKean
        Sara Goldsmith Schwartz (BBO No. 558972)
        Jaimie A. McKean (BBO No. 657872)
        Brian M. Doyle (BBO No. 680704)
        Sarah H. Fay (BBO No. 690660)
        SCHWARTZ HANNUM PC
        11 Chestnut Street
        Andover, MA 01810
        Phone: (978) 623-0900
        Fax:  (978) 623-0908
        schwartz@shpclaw.com
        jmckean@shpclaw.com
        bdoyle@shpclaw.com
        sfay@shpclaw.com

Date:  July 22, 2016
1604307

## CERTIFICATE OF SERVICE

I, Jaimie A. McKean, hereby certify that on the 22nd day of July, 2016, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

    John J.E. Markham, II
    Markham & Read
    One Commercial Wharf West
    Boston, MA 02110

        /s/ Jaimie A. McKean